# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Evig, LLC,

      Plaintiff

v.

Mister Brightside, LLC, et al.,

      Defendants

Case No.: 2:23-cv-02051-JAD-NJK

**Order Granting Mister Brightside, LLC's Motion for Summary Judgment and Notifying Plaintiff of Intent to Dismiss Claims Against Remaining Defendants under FRCP 4(m)**

[ECF No. 34]

Plaintiff Evig, LLC, manufacturer of "Balance of Nature" fruit and vegetable supplements, sues Mister Brightside, LLC and its owners and affiliates for infringing on and diluting Evig's trade dress. Mister Brightside moves for summary judgment, contending that Evig lacks sufficient evidence to support its trade-dress-infringement and dilution claims. Mister Brightside meets its initial burden to show the absence of evidence to create a genuine dispute of material fact on both claims. And because Evig fails to present any facts that create a genuine dispute about whether its trade dress is inherently distinctive or has acquired secondary meaning, I grant Mister Brightside summary judgment on Evig's infringement claim. Evig has not shown that there is a genuine dispute about whether its trade dress is famous in Nevada, so I grant Mister Brightside summary judgment on Evig's dilution claim, too. And because Evig never filed proof of service on the remaining defendants, I notify Evig of the court's intent to dismiss the claims against them under Federal Rule of Civil Procedure (FRCP) 4(m).[1]

---

[1] After reviewing the parties' briefs, I find this matter appropriate for disposition without oral argument. L.R. 78-1.

**Background**

**A.    Evig sells fruit and veggie supplements.**

Evig, LLC sells fruit and vegetable supplements under the brand name "Balance of Nature."[2]  In April 2021,[3] Evig began selling its "fruits" and "veggies" supplements in these red and green bottles:



Evig contends that its products' packaging is a protectable trade dress consisting of 18 details:

> (1) the original names of EVIG's products, (2) followed by the words "Fruits" and "Veggies," (3) its distinctive packaging of its Fruits and Veggies supplements together with its red bottle, red lid for Fruits [and] the green bottle, green lid for the Veggies supplement, (4) the yellow lettering on the bottles, (5) its distinctive font use, (6) the use of the phrase "Whole Produce" above the words "Fruits" and "Veggies," (7) the layout of fruits and vegetables on the packaging, (8) incorporating a leaf to replace the letter "a" in "Nature," (9) its brand name located at the top center of the bottle, (10) the three formulated blends on the ingredients with the ingredients divided into separate blends, (11) the name of each respective blend, (12) the weights of the ingredients contained in each blend (720mg, 713mg, 576mg in the Veggies and 731mg, 719mg, and 561mg for the Fruits), (13) with 15 Veggies and 16 fruits . . . , (14) each bottle containing 90 capsules . . . , (15) with that information appearing at the bottom of

---

[2] ECF No. 1-1 at 44, ¶ 17 (amended complaint).

[3] *See* ECF No. 34-5 at 5 (USPTO filing receipt for trademark application stating that the trade dress's first commercial use was in April 2021, signed under penalty of perjury); ECF No. 34-6 (authenticated screenshots from the internet archive showing that Evig's supplements were sold with a different trade dress before mid-2021).

the bottle, (16) the use of "Real Food," "Real Science," and "Real Nutrition," (17) pictures of whole fruits and vegetables on the labels, [and] (18) "Dietary Supplement."[4]

Evig recently applied for a trade-dress registration with the U.S. Patent and Trademark Office, but that application remains pending.[5]

## B.    Mister Brightside also sells fruit and veggie supplements.

Mister Brightside is a competing nutritional-supplement company that began selling fruit and vegetable supplements under the brand name "Simply Nature's Promise" in January 2022.[6] Its "Simply Fruits" supplements are sold in bottles with an orange label, and its "Simply Veggies" supplements are sold in bottles with a green label:



Both bottles feature the "Simply Nature's Promise" brand name at the top center of the bottle, use the phrase "made with whole food" under the product's name, and include pictures of whole fruits and vegetables (respectively) on the bottom third of the label. They each also contain the

---

[4] ECF No. 1-1 at 45–46, ¶ 26 (cleaned up); *see also* ECF No. 34-5 (USPTO trademark application).

[5] ECF No. 34-5.

[6] ECF No. 34-1 at 3, ¶ 5 (Decl. of Ryan O'Shaughnessy, manager and controlling member of Mister Brightside, LLC).

term "dietary supplement" and state the number of capsules each bottle contains at the bottom of the label.[7]

**C.    Evig sued but was denied preliminary injunctive relief.**

Evig filed this suit against Mister Brightside and its affiliates and officers in state court, alleging that the defendants infringed on its trade-dress under Nevada common law, violated Nevada statutory law protecting registered trademarks, intentionally interfered with Evig's prospective economic advantage, engaged in deceptive trade practices, and diluted Evig's brand in violation of Nevada law.[8]    Mister Brightside removed the case to federal court under diversity jurisdiction and moved to dismiss the complaint for failure to state a claim.[9]    I granted that motion on some claims, leaving only Evig's infringement and dilution claims.[10]    And I denied Evig's motion for a preliminary injunction, concluding that Evig had not shown a likelihood of success on the merits of its infringement claim.[11]

**D.    Mister Brightside moves for summary judgment.**

Mister Brightside now moves for summary judgment on both of Evig's remaining claims.[12]    It contends that Evig cannot prove trade-dress infringement because the trade dress is

---

[7] The record reflects that, before Mister Brightside's labels looked like this, they bore a closer resemblance to Evig's labels.  *See* ECF No. 34-14 at 3 (Evig's March 7, 2022, cease-and-desist letter to Mister Brightside).  Mister Brightside's bottles previously used a yellow font and the term "whole produce."  *Id.*  In response to Evig's demand letter, Mister Brightside voluntarily changed their bottles in the attempt to alleviate some of Evig's concerns.  *See* ECF No. 34-15.  Those changes were formalized in May 2022.  *See* ECF No. 34-16 at 2.

[8] *See* ECF No. 1-1 at 41–72 (amended complaint).

[9] ECF Nos. 1, 5.

[10] ECF Nos. 30, 31.

[11] ECF No. 33.

[12] ECF No. 34.

4

functional, is not inherently distinctive, and has not acquired secondary meaning.[13]  Mister Brightside also argues that Evig has not produced sufficient evidence of consumer confusion to satisfy that element of its infringement claim.[14]  And it moves for judgment on Evig's dilution claim, asserting that Evig has no evidence to show that its trade dress is famous in the state of Nevada.[15]

## Discussion

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[16]  If the moving party does not bear the burden of proof on the dispositive issue at trial, it is not required to produce evidence to negate the opponent's claim—its burden is merely to point out the evidence (or lack of evidence) showing the absence of a genuine material factual issue.[17]  The party opposing summary judgment must come forward with evidence creating a genuine factual dispute only after the moving party meets its initial burden.[18]  And the movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[19]  The court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[20]

---

[13] *Id.* at 8–16.

[14] *Id.* at 17–26.

[15] *Id.* at 27–29.

[16] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[17] *Id.* at 323.

[18] *Id.* at 322.

[19] *Id.*

[20] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

1

2
**A.      Evig has not presented evidence to support the second element of its trade-dress-infringement claim.**

3
Evig brings its trade-dress claim under Nevada common law, but because the Supreme

4
Court of Nevada hasn't explicitly recognized a common-law trade-dress claim or articulated a

5
standard for one, both parties analyze it under the federal Lanham Act.[21]  In cases like this, when

6
"the state's highest court has not decided an issue, the task of the federal court is to predict how

7
the state high court would resolve it."[22]  Because the Supreme Court of Nevada has previously

8
looked to federal law to guide its common-law trademark-infringement analysis, I predict that it

9
will do the same when addressing trade-dress claims.[23]

10
The Lanham Act protects against trade-dress infringement as a form of unfair

11
competition.[24]  "[T]rade dress refers to the total image of a product and may include features

12
such as size, shape, color, color combinations, texture[,] or graphics."[25]  "Trade dress is the

13
composite tapestry of visual effects," so courts must "focus *not* on the individual elements, but

14
rather on the overall visual impression that the combination and arrangement of those elements

15
create."[26]  To prevail on a claim for trade-dress infringement, a plaintiff must prove "(1) that its

16
claimed dress is nonfunctional; (2) that its claimed dress serves a source-identifying role either

17

18
[21] The Supreme Court of Nevada has recognized common-law trademark-infringement claims generally.  *A.L.M.N., Inc. v. Rosoff*, 757 P.2d 1319, 1321 (Nev. 1988).  So I predict that it would likewise recognize Evig's trade-dress claim.

19
[22] *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001).

20
[23] *See generally A.L.M.N*, 757 P.2d 1319.  When resolving Evig's injunction motion, I likewise concluded that Nevada courts would look to federal law on Evig's trade-dress claim.  ECF No.

21
33 at 4.  Neither party suggests that this conclusion was in error, and they continue to rely on federal trade-dress cases from across the country to support their arguments on this claim.

22
[24] 15 U.S.C. § 1125(a).

23
[25] *Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993) (cleaned up).

[26] *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1259 (9th Cir. 2001).

1  because it is inherently distinctive or has acquired secondary meaning; and (3) that the

2  defendant's product or service creates a likelihood of consumer confusion."[27]  The failure to

3  prove any one element is fatal to a plaintiff's trade-dress claim.[28]

4      **1.  Evig has not presented any evidence of inherent distinctiveness.**

5      A trade dress is inherently distinctive if its "intrinsic nature serves to identify a particular

6  source of a product."[29]  To determine whether a product's packaging is inherently distinctive,

7  most courts apply the United States Court of Custom and Patent Appeals' test developed in

8  *Seabrook Foods, Inc. v. Bar-Well Foods Limited*, asking (1) "whether [the design] was a

9  common basic shape or design," (2) "whether it was unique or unusual in a particular field,"

10  (3) "whether it was a mere refinement of a commonly adopted and well-known form of

11  ornamentation for a particular class of goods viewed by the public as a dress or ornamentation

12  for the goods," or (4) "whether it was capable of creating a commercial impression distinct from

13  the accompanying words."[30]  The *Seabrook* factors are meant to ascertain "whether the design,

14  shape[,] or combination of elements is so unique, unusual[,] or unexpected in this market that

15  one can assume without proof that it will automatically be perceived by customers as an

16  indicator of origin."[31]

17

18

_____

19  [27] *Id.* at 1258.

20  [28] *See Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1147 (9th Cir. 2009) (declining to address remaining two elements after concluding "that a reasonable jury could not find that Art Attack's trade dress has acquired secondary meaning").

21  [29] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 770 (1992).

22  [30] *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342 (C.C.P.A. 1977) (cleaned up); *see also McCarthy on Trademarks & Unfair Competition* § 8:13 (4th ed. 2017) (collecting cases applying the *Seabrook* factors).

23  [31] *McCarthy on Trademark* § 8:13.

Mister Brightside argues that Evig has failed to put forth any evidence showing that the trade dress is inherently distinctive.[32]  It also presents evidence showing that "numerous market participants use a similar trade dress."[33]  In response, Evig states without evidentiary support that its "trade dress is inherently distinctive as its memorable nature serves primarily to identify and designate the origin of the Balance of Nature products" and that the "famous bottle appearance is synonymous with high quality ingredients from the United States."[34]  Evig does not analyze inherent distinctiveness under the *Seabrook* factors or point to any evidence showing that its design is indeed famous or unique.[35]  I conclude that Mister Brightside has met its burden to show that no genuine factual dispute exists concerning whether Evig's trade dress is inherently distinctive.  By failing to present any evidence to show that its trade dress uniquely identifies its product, Evig fails to shift the burden back to defendants on this element.  So Evig cannot prevail on the second element of its trade-dress-infringement claim by showing that its trade dress is inherently distinctive.

### 2. Evig has not presented evidence to create a genuine dispute that its trade dress has achieved secondary meaning.

Evig can't prove the second element of its infringement claim by showing that its packaging has acquired secondary meaning, either.  "Secondary meaning is a mental recognition in buyers' and potential buyers' minds that products connected with the trade dress are

---

[32] ECF No. 34 at 12–13.

[33] ECF No. 34 at 12 (citing ECF No. 34-12).  Evig argues that all of those products copied Balance of Nature's labels too.  *See* ECF No. 35 at 6, 12. But Evig again fails to support its statements with any evidence, so I am not persuaded by them.

[34] ECF No. 35 at 7.

[35] Evig instead highlights evidence that it contends shows Mister Brightside intentionally copied Evig's label design.  *See* ECF No. 35 at 6.  I address that evidence as it pertains to proof of secondary meaning *infra* at § A.2.d.

associated with the same source."[36]  To determine whether a trade dress has acquired secondary

meaning, courts consider "the exclusivity, manner, and length of use of the trade dress, the

amount and manner of advertising, the amount of sales, and proof of intentional copying by the

defendant."[37]  Direct consumer testimony and survey evidence can "provide the most persuasive

evidence of secondary meaning," and proof of copying "strongly supports an inference of

secondary meaning.[38]  Evig, "as the party attempting to establish legal protection for its

unregistered trade dress, has the burden of proving secondary meaning by a preponderance of the

evidence."[39]

### a.  Mister Brightside's comparative advertising doesn't show that Evig's trade dress has acquired secondary meaning.

Evig relies primarily on one of Mister Brightside's advertisements purporting to compare

its supplements with a "main competitor" represented by an all-red and all-green bottle:



---

[36] *Jason Scott Collection, Inc. v. Trendily Furniture, LLC*, 68 F.4th 1203, 1214 (9th Cir. 2023) (cleaned up).

[37] *adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 754 (9th Cir. 2018).

[38] *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989).

[39] *Tone Bros., Inc. v. Sysco Corp.*, 28 F.3d 1192, 1201 (Fed. Cir. 1994).

1  Evig argues that Mister Brightside's advertisement is proof of secondary meaning because

2  "everyone knows or recognizes [that] those are Balance of Nature bottles. Evig's advertising is

3  just that good."[40] But, as Mister Brightside argues and as I concluded when denying Evig's

4  preliminary-injunction motion, Mister Brightside doesn't use Evig's asserted trade dress in this

5  advertisement—it uses only a representation of green and red bottles. Because Evig "doesn't

6  contend that its red and green bottles are distinctive enough to qualify as its trade dress without

7  the other elements it lists in its complaint, . . . it's unclear how this evidence supports its position

8  that its trade dress—with accompanying images, words, fonts, and secondary colors—has

9  achieved secondary meaning."[41]

10       Even if Evig could reasonably claim that its red and green bottles alone are distinctive,

11  the representation that Mister Brightside uses still differs substantially from Evig's trade dress.

12  Mister Brightside's advertisement depicts solid red and green bottles with screw-top lids, but

13  Evig's bottles are white with red and green wrappers and pop-top lids. In sum, this

14  advertisement isn't evidence that Evig's trade dress has secondary meaning because it doesn't

15  use Evig's trade dress. So Mister Brightside has shown that its comparative advertisement

16  doesn't create a genuine dispute about whether Evig's trade dress has acquired secondary

17  meaning, and Evig doesn't rebut that conclusion.

18
19          ***b.    Evig's trade dress was not in use long enough to create a genuine
dispute of fact about exclusive length of use.***

20       Evig also contends without support that the "length of use" factor creates a genuine

21  dispute of fact about secondary meaning because Evig "entered the market in 1997," so the

22

23  [40] ECF No. 35 at 9.

   [41] ECF No. 33 at 14.

company's "length of exclusivity in the marketplace numbers at least twenty-four years."[42]  But Mister Brightside attaches Evig's April 2024 trade-dress application to the U.S. Patent and Trademark Office (USPTO), which reflects that Evig only began using this particular trade dress in April 2021.[43]  It also presents archived versions of Evig's past websites showing that, before mid-2021, Evig's bottles looked nothing like their current design.[44]  Evig fails to present any evidence or argument to dispute Mister Brightside's evidence showing that Evig began using the trade dress at issue in this case just eight months before Mister Brightside entered the market.  The fact that Evig and its products may have been around for a long time does not create a genuine issue of fact about the exclusivity and length of use of a particular trade dress, which according to Evig's own trademark application, had only been in use for a short period of time before Mister Brightside launched its competing product.[45]  So Mister Brightside has met its burden to show that the length and exclusivity-of-use factors do not create a genuine issue of fact concerning secondary meaning, and Evig does not meet its shifted burden to show that they do.

### c.    *Evig hasn't shown that its sales indicate secondary meaning.*

To address the "amount of sales" factor, Evig boasts that "[w]ithout question or dispute, Evig has realized significant sales success based upon efforts in the marketplace to which [d]efendants do not compare," while simultaneously acknowledging that "Evig has not

---

[42] ECF No. 35 at 13 (cleaned up).

[43] ECF No. 34-5 at 5 (USPTO filing receipt for trademark application, signed under penalty of perjury).

[44] *See generally* ECF No. 34-6 (authenticated screenshots from the internet archive showing that Evig's supplements were sold in white bottles until 2016, when it switched to red and green bottles that used a different font and layout from the 2021 version at issue here).

[45] *See EZ Pedo v. Mayclin Dental Studio, Inc.*, 284 F. Supp. 3d 1065, 1075 (E.D. Cal. 2018) (collecting cases rejecting secondary-meaning claims based on trade-dress use for less than 10 months, 18 months, and 20 months).

undertaken a [sales] comparison with [Mister Brightside]. . . ."[46]  In support of this factor, Evig

cites to an affidavit from Evig's Director of Digital Media, which provides no sales estimates or

data.[47]  It instead questions Mister Brightside's methods of estimating sales from both companies

and makes conclusory assertions about the effect of Mister Brightside's products on Evig's

sales.[48]  Nothing in that affidavit is relevant to Evig's or Mister Brightside's sales.  So Evig has

failed to show a genuine dispute about the impact of sales on secondary meaning.[49]

### d.  *Evig fails to present evidence that other brands attempted to copy—or that Mister Brightside intentionally copied—Evig's trade dress.*

Mister Brightside contends that Evig has no evidence that Mister Brightside or any other

company copied Evig's trade dress.[50]  Evig responds that there is a genuine dispute concerning

attempts to copy its trade dress, stating (without support) that approximately 40 "interlopers have

entered the fruit and veggie supplement market in the past two to three years" and "[t]here is a

great number of attempts to copy Evig's trade dress."[51]  But Evig provides zero evidentiary

---

[46] ECF No. 35 at 12.

[47] *See* ECF No. 35-13.

[48] *See id.* at ¶¶ 7–11, 14.

[49] In support of its sales arguments, Evig also relies on an unauthenticated screenshot of three products, presumably sold by Mister Brightside, that have nothing to do with this case.  *See* ECF No. 35-5.  It appears that Evig is attempting to show that Mister Brightside has copied other products to support its statement that, "Clearly, [Mister Brightside's] sole source of sales success derives from Evig's fame and advertising budget."  ECF No. 35 at 12.  This evidence is wholly irrelevant and it does not create any genuine issues of fact in this case.  Evig also presents evidence that unserved defendant Charles Brewer owns several other businesses and has been convicted of a felony.  *See id.* at 2.  None of that evidence has anything to do with Evig's infringement or dilution claims and appears to be included merely to stigmatize the defendants.  Because that evidence is irrelevant, I decline to consider it.

[50] ECF No. 34 at 16.

[51] ECF No. 35 at 12.

1  support for this claim and has thus failed to show there's a genuine issue of fact concerning

2  competitors' attempts to copy Evig's trade dress.

3        Evig also relies on Mister Brightside CEO Ryan O'Shaughnessy's declaration to suggest

4  that the company attempted to copy Evig.  O'Shaughnessy declared that "prior to starting sales,

5  [Mister Brightside's] principals, including myself, reviewed the market for [fruit and veggie]

6  supplements to see what was out there" and acknowledges that "[w]e reviewed [Evig's] product,

7  as well as other products [i]n the market at the time."[52]  Evig also refers to one of Mister

8  Brightside's responses to an interrogatory request, in which Mister Brightside explains how it

9  developed its product's packaging and states that it "did not 'copy' [Evig's] product to create its

10  own" but "was aware of [Evig's] presence in the industry (along with other competitors) and

11  intended to compete with [Evig] and other fruits and veggies supplement companies . . . ."[53]

12        Neither of these statements amounts to evidence that Mister Brightside attempted to or

13  intentionally copied Evig's trade dress.  They merely concede that O'Shaughnessy and some of

14  Mister Brightside's employees reviewed competitors' products before they entered the market.

15  A defendant's acknowledgement that it investigated the market, its players, and their products is

16  not evidence that the defendant copied any product's trade dress, because that conclusion is not a

17  logical inference.[54]

18  _____

[52] ECF No. 35-10 at ¶ 6.

19  [53] ECF No. 35-6 at 7–9.

20  [54] To bolster its intentional-copying argument, Evig relies on what it calls "Exhibit 14,
Objections and Responses to Requests to Admit" to claim that Mister Brightside "admitted" that

21  it "intended to copy Evig's trade dress."  ECF No. 35 at 14.  But the exhibit Evig references
contains *Evig's responses* to *Mister Brightside's admission requests*, and nowhere in that

22  document (or in any other document Evig attached to its response) does Mister Brightside admit
to intentionally copying Evig's trade dress.  *See generally* ECF No. 35-14.  Evig's attempt to

23  concoct admissions that Mister Brightside never made is deeply troubling and likely runs afoul
of Federal Rule of Civil Procedure 11(b)(3) ("By presenting to the court a . . . written motion
. . . , an attorney . . . certifies that to the best of the person's knowledge, information, and belief,

Evig otherwise relies on Rick L. Hirschi's "expert report," in which he opines that "it is extremely improbable" that Evig's competitors (including Mister Brightside) developed their products "completely independent of Balance of Nature based on the information stated on their labels."[55]  But as I concluded in my order denying Evig injunctive relief on its claims, Hirschi wasn't referring to trade dress at all, but product ingredients:

> [Hirschi] didn't analyze the *trade dress* of these competing supplements; he analyzed the *ingredients* in them.  Evig hasn't sufficiently explained how the ingredients—or any particular combination of ingredients—used in a product and printed on a bottle's "Supplement Facts" section are part of its products' trade dress.  A supplement's proprietary blend of ingredients may call for patent protection, but such ingredients don't involve the "size, shape, color, color combinations, texture, or graphics" that warrant protection through a trade-dress claim. [56]

Evig fails to provide any additional evidence, context, or authority suggesting that my prior analysis was misguided.  So Hirschi's report does not allude to any genuine dispute of fact concerning whether Mister Brightside intentionally copied Evig's trade dress.  And even if I did construe Mister Brightside's statements about reviewing Evig's products as supporting Evig's intentional-copying arguments, those fairly innocuous statements (in light of the paucity of other evidence suggesting secondary meaning) do not create a genuine dispute that Evig could show secondary meaning by a preponderance of the evidence.

---

formed after an inquiry reasonable under the circumstances . . . [that] the factual contentions have evidentiary support . . . .").

[55] ECF No. 35-8 at 2.

[56] ECF No. 33 at 10 (first citing ECF No. 16-3 at 2 (Hirschi's report, submitted in support of Evig's preliminary-injunction motion), then quoting *Int'l Jensen, Inc.*, 4 F.3d at 822)); *see also* U.S. Patent & Trademark Office, *Trademark Manual of Examining Procedure* 807.02 (noting that "purely informational matter such as net weight, contents, or business addresses are generally not considered part of the mark" and shouldn't be included in photographs depicting a product's trade dress).

1

2

   ***e. Evig doesn't support its remaining secondary-meaning arguments with
any evidence, so those arguments fail to preclude summary judgment.***

3    Mister Brightside contends that Evig also can't show that its marketing or consumer

4 testimony about its trade dress support a finding of secondary meaning.[57] Evig's arguments in

5 response aren't sufficient to meet its burden to show a genuine dispute about those factors. Evig

6 says that it "expends millions on advertising each year and has done so for many years," but it

7 offers no evidentiary support for that statement.[58] It concedes that it "has yet to requisition a

8 consumer study" because "the product is so well known [that] it has not been a matter of

9 inquiry."[59] But Evig doesn't provide any proof that "consumers know the Balance of Nature

10 brand,"[60] and this court need not take Evig's word for it. It asserts that "Evig representatives

11 have been on television, radio[,] and [the] internet for many years" and that "many influencers

12 and advertisers have used Evig's products"—again, offering no evidentiary support for these

13 statements.[61]

14    In the face of a properly supported motion for summary judgment, it's the plaintiff's

15 burden to come forward with *evidence* to support any genuine disputes of fact that must be

16 resolved by a jury.[62] Attorney arguments made in a brief are not evidence, and they hold no

17

---

18 [57] ECF No. 34 at 14–15.

 [58] *See* ECF No. 35 at 11.

19 [59] *Id.* (cleaned up).

20 [60] *Id.* (cleaned up).

 [61] *Id.* (cleaned up).

21

 [62] *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely

22 disputed must support the assertion by citing to particular parts of materials in the record,
including depositions, documents, electronically stored information, affidavits or declarations,

23 stipulations . . . , admissions, interrogatory answers, or other materials . . . ." (cleaned up));
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) ("the plaintiff must present
affirmative evidence in order to defeat a properly supported motion for summary judgment").

1  weight when determining whether genuine disputes of fact exist.[63]  Mister Brightside has

2  adequately shown that Evig lacks evidence to create a genuine dispute concerning whether its

3  trade dress has acquired secondary meaning, and Evig has failed to shift that burden back to

4  Mister Brightside.  Because Evig has also failed to present evidence to support its assertion that

5  its trade dress is inherently distinctive,[64] it cannot prevail on an essential element of its trade-

6  dress-infringement claim.[65]  I thus grant summary judgment to Mister Brightside and against

7  Evig on the trade-dress-infringement claim.

8  **B.    Evig has not shown that a genuine dispute of fact exists for its dilution claim.**

9        Nevada Revised Statute (NRS) 600.435 provides that "the owner of a mark that is famous

10  in this State may bring an action to enjoin commercial use of the mark by a person if such use

11  (a) begins after the mark has become famous; and (b) causes dilution of the mark."[66]  The statute

12  directs courts to consider eight factors when determining "whether a mark is famous" in Nevada:

13            (a) the degree of inherent or acquired distinctiveness of the mark in
              this State;

14

15            (b) the duration and extent of use of the mark in connection with
              the goods and services with which the mark is used;

16            (c) the duration and extent of advertisement and promotion of the
              mark in this State;

17

---

18  [63] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." (citing *Angel*

19  *v. Seattle-First Nat'l Bank*, 653 F.2d 1293, 1299 (9th Cir. 1981)); *Ferrying B.V. v. Barr Lab'ys, Inc.*, 437 F.3d 1181, 1193 (Fed. Cir. 2006) ("[c]onclusory allegations and attorney arguments are

20  insufficient to overcome a motion for summary judgment").

21  [64] *See supra* at pp 7–8.

22  [65] Because Evig's failure to identify evidence in support of this element is fatal to its infringement claim, I need not and do not reach the additional elements of whether Evig has shown that its trade dress is not functional or whether Mister Brightside's packaging causes

23  consumer confusion.

[66] Nev. Rev. Stat. § 600.435(1) (cleaned up).

(d) the geographical extent of the trade area in which the mark is used;

(e) the channels of trade for the goods or services with which the mark is used;

(f) the degree of recognition of the mark in the trading areas and channels of trade in this State used by the owner of the mark and the person against whom the injunction is sought;

(g) the nature and extent of use of the same or similar mark by other persons; and

(h) whether the mark is registered in this State or registered in the United States Patent and Trademark Office [under] federal law.[67]

Mister Brightside contends that Evig has not come forward with any evidence to support its dilution claim.[68]  It reiterates that Evig has not shown inherent or acquired distinctiveness generally, let alone whether its unregistered trade dress is distinct among Nevadans.[69]  Mister Brightside also points out that Evig has been using this trade dress only since 2021—a relatively short amount of time for a mark to become famous.[70]  And it argues that Evig has failed to supply any evidence of advertisements using its trade dress in Nevada, the geographical scope of its marketing or sales, or the degree of recognition of the mark in this state.[71]

In response, Evig all but concedes that it has no evidence to support most of Nevada's statutory factors to assess a trade dress's degree of fame.  It states that Evig launched in 1997 to show that its products have been in the Nevada market for decades.[72]  But NRS 600.435 is

---

[67] Nev. Rev. Stat. § 600.435(2) (cleaned up).

[68] ECF No. 34 at 27–29.

[69] *Id.* at 28.

[70] *Id.*

[71] *Id.* at 28–29.

[72] ECF No. 35 at 16.

1    concerned with how long the owner's mark has been used in state commerce, not how long the

2    company itself has operated there.[73]  Evig hasn't established when its mark became famous or

3    that the mark was famous before Mister Brightside began selling its products.[74]  And as

4    discussed supra, the undisputed evidence shows that Evig began using its trade dress in 2021, so

5    its statements about how long Evig has been in business don't establish how long it has used its

6    trade dress in this state.[75]  Evig thus fails to show that the statute's duration-of-use factor

7    supports a finding that its trade dress is famous.

8          Nor does Evig present any evidence or argument to show that the remaining statutory

9    factors weigh in favor of such a finding.  Even if I were to consider Evig's infringement

10   arguments to support its dilution claim, Evig has not come forward with any evidence that

11   demonstrates statewide fame.  The record is devoid of evidence of inherent distinctiveness or

12   secondary meaning, Evig has not produced evidence of advertising using its trade dress in this

13   state, and it acknowledges that its trade dress is not registered with the state or the USPTO.[76]

14   Because Mister Brightside has met its burden to show that there is no genuine dispute as to

15   Evig's dilution claim, and Evig has not met its shifted burden to show that it can produce

16   evidence to support its claim, there is no genuine dispute that it cannot prevail on its dilution

17

18

---

19   [73] *See* Nev. Rev. Stat. § 600.435 (focusing on determining "whether a mark is famous in this
     State").

20   [74] *See* ECF No. 34-3 at 5 (Mister Brightside's interrogatory asking Evig to "state the date . . . by
21   which [Evig] contends that the asserted trade dress had become famous in Nevada," to which
     Evig responded, "Plaintiff cannot put a date on when it became famous," claiming that the
22   company itself became famous in "around 2009").

     [75] *See supra* at pp. 10–11.

23   [76] *See supra* at pp. 6–16; *see also* ECF No. 31 at 21:12–14 (motion-to-dismiss hearing transcript,
     in which Evig's counsel concedes that Evig's trade dress is not registered).

1  claim.  I thus grant summary judgment to Mister Brightside and against Evig on Evig's dilution

2  claim.

3

**C.    Evig's claims against the remaining, unserved defendants will be dismissed without**

4  **prejudice absent proof of timely service.**

5          Mister Brightside points out, and Evig does not deny, that Evig failed to serve the four

6  other defendants originally named in this lawsuit: Charles Brewer, Ryan O'Shaughnessy,

7  Newport Beauty and Wellness, LLC, and Bayview Marketing, LLC.  It appears that, during the

8  early stages of this litigation, counsel for Mister Brightside informed Evig's counsel that she was

9  prepared to accept service on those remaining defendants' behalf, but Evig's counsel never

10  responded to that offer.[77]  And this case's docket reflects that Evig never filed proofs of service

11  for them.  "A federal court is without jurisdiction over a defendant unless the defendant has been

12  served . . . ," so this court may not grant summary judgment in favor of those unserved

13  defendants.[78]

14          Federal Rule of Civil Procedure 4(m) requires a plaintiff to serve each defendant "within

15  90 days after the complaint is filed."[79]  If the plaintiff fails to do so, "the court—on motion or on

16  its own after notice to the plaintiff—must dismiss the action without prejudice against that

17  defendant or order that service be made within a specified time."[80]  So, to comply with FRCP

18  4(m), I hereby notify Evig that I intend to dismiss its claims against these remaining defendants

19  for want of service unless Evig files proof of timely service by **February 10, 2025**.  If Evig fails

20

21  ───────────────────

[77] ECF No. 1-2 at 3, ¶ 5.

22  [78] *Crowley v. Bannister*, 734 F.3d 967, 974–75 (9th Cir. 2013) (cleaned up).

23  [79] Fed. R. Civ. P. 4(m).

[80] *Id.*

to file such proof by that deadline, the claims against these defendants will be dismissed under FRCP 4(m), final judgment will be entered, and this case will be closed.

**Conclusion**

IT IS THEREFORE ORDERED that defendant Mister Brightside, LLC's motion for summary judgment **[ECF No. 34] is GRANTED**. With good cause appearing and no reason to delay, the Clerk of Court is directed to ENTER PARTIAL FINAL JUDGMENT for Mister Brightside, LLC and against Evig, LLC on Evig's trade-dress-infringement and dilution claims, terminating this litigation as to Mister Brightside.

IT IS FURTHER ORDERED that this court intends to dismiss Evig's claims against the remaining, unserved defendants unless Evig files proof of timely service by **February 10, 2025**. If Evig fails to file such proof by that deadline, the claims against these defendants will be dismissed under FRCP 4(m).

_____
U.S. District Judge Jennifer A. Dorsey
January 31, 2025