# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

Evig, LLC,

      Plaintiff

v.

Mister Brightside, LLC, et al.,

      Defendants

Case No.: 2:23-cv-02051-JAD-NJK

**Order Granting in Part Mister Brightside, LLC's Motion for Attorneys' Fees and Dismissing Remaining Defendants under FRCP 4(m)**

[ECF No. 40]

      In this state-law trademark-infringement case, this court granted summary judgment in favor of defendant Mister Brightside, LLC on plaintiff Evig LLC's claims that the labels on Mister Brightside's fruit and veggie supplements infringed on and diluted Evig's unregistered trade dress. I had previously dismissed several other claims because Evig couldn't allege any facts to support them. Mister Brightside now moves for $247,528.00 in attorneys' fees, arguing that fee awards to the prevailing party are statutorily permitted for trademark cases under Nevada Revised Statute (NRS) 600.430 and, alternatively, that Evig brought and maintained this case without reasonable grounds under NRS 18.010(2)(b).

      I grant Mister Brightside's motion in part. Although NRS 600.430 doesn't authorize attorneys' fees for cases that don't involve a registered trademark, I find that Mister Brightside is entitled to fees under NRS 18.010(2)(b) because Evig brought and maintained all but its common-law trade-dress-infringement claim without reasonable grounds. So I allocate fees to include 80% of those fees incurred before Mister Brightside's motion to dismiss was resolved— to account for the four of five meritless claims that Evig advanced at the start of this litigation— and 50% of those fees incurred after that date to account for Evig's unsupported dilution claim. I

also excise the hours charged to draft a motion to exclude Evig's expert because that motion was

never filed and Mister Brightside has failed to show why awarding fees for that motion would be

reasonable.  These calculations result in a fee award of $155,465.75.  I also dismiss the claims

against unserved defendants Charles Brewer, Ryan O'Shaughnessy, Newport Beauty and

Wellness, LLC, and Bayview Marketing, LLC under Federal Rule of Civil Procedure 4(m).

## Background

### A.    Mister Brightside successfully moved to dismiss three of Evig's five claims.

When Evig initiated this lawsuit in state court,[1] it advanced five claims for relief:

common-law trade-dress infringement, trade-dress infringement under NRS 600.420, intentional

interference with prospective economic advantage, violation of Nevada's Deceptive Trade

Practices Act (DTPA), and dilution of Evig's trade dress under NRS 600.435.[2]  After Mister

Brightside removed the case to this court, it moved to dismiss all of Evig's claims.[3]  Evig

responded with a motion to remand and a motion for a preliminary injunction prohibiting Mister

Brightside from selling its "infringing product."[4]  I denied Evig's motions, finding that Mister

---

[1] This was Evig's second attempt to advance trademark-infringement claims against Mister Brightside.  In an earlier case, Evig alleged that Mister Brightside infringed its trademark under state and federal law, based on largely identical facts and assertions about its trade dress.  U.S. District Judge James C. Mahan dismissed all of Evig's claims for failure to state a claim.  *See* ECF No. 26 in *Evig, LLC v. Mister Brightside, LLC*, Case No. 2:23-cv-00186-JCM-BNW.  To the extent that the disposition of that case is relevant to my analysis, I discuss it *infra* at 8–9.

[2] ECF No. 1-1 at 20–37.  Evig's complaint listed eight causes of action, but three of them were actually just prayers for relief, not independent claims.  *See id.* at 17–20, 37–39 (pleading "injunctive relief," "constructive trust," and "accounting of profits/unjust enrichment" as causes of action).  I construed those "claims" as requests for relief and, to the extent that Evig intended to plead an unjust-enrichment claim, I dismissed it because the facts didn't support it.  ECF No. 31 at 29:18–25, 31:9–23.

[3] ECF No. 5.

[4] ECF Nos. 6, 16.

1   Brightside had shown that diversity jurisdiction triggered federal jurisdiction for this case[5] and

2   that Evig's claims were unlikely to succeed on the merits and thus didn't warrant preliminary

3   injunctive relief.[6]

4          After a hearing, I also granted in part Mister Brightside's motion to dismiss.[7]  Evig

5   conceded that its claim under NRS 600.420 failed because its trade dress was not registered in

6   Nevada, so I dismissed its statutory trademark-infringement claim on that basis.[8]  I also

7   dismissed Evig's intentional-interference and DTPA claims because Evig could not allege facts

8   to support them or point to the specific DTPA provision that Evig was accusing Mister

9   Brightside of violating.[9]  But I found that Evig had pled enough facts to support its common-law

10  trade-dress infringement and dilution claims, so I allowed those claims to move forward.[10]

11

12  **B.    Mister Brightside won summary judgment on Evig's remaining two claims because Evig did not produce competent evidence to support them.**

13         After the discovery period closed, Mister Brightside moved for summary judgment on

14  Evig's two remaining claims, arguing that Evig could not present competent evidence to support

15  them.[11]  I granted that motion, concluding that Evig didn't present credible evidence to show that

16  its trade dress was inherently distinctive or had acquired secondary meaning, so it could not

17  prevail on its common-law trade-dress infringement claims.[12]  I also concluded that Evig could

18

19  [5] ECF No. 31 at 10:22–12:2.

    [6] ECF No. 33.

20  [7] ECF No. 31.

21  [8] *Id.* at 21:12–17, 30:9–12.

    [9] *Id.* at 30:13–31:3.

22  [10] *Id.* at 30:1–8, 31:4–8.

23  [11] ECF No. 34.

    [12] ECF No. 38 at 6–16.

1  not prevail on its dilution claim.[13]  Nevada's statutory dilution claim requires the plaintiff to

2  show that its mark is famous in this state and sets forth a unexhaustive list of factors to help

3  determine fame, like the "duration and extent" of the mark's use, how long the plaintiff has been

4  advertising the mark, and the degree of recognition that the mark has achieved.[14]  But Evig failed

5  to present evidence to support this or any of the other statutory factors.  It instead presented

6  evidence showing that it had been using its trade dress for less than five years, while at the same

7  time relying on a generalized statement that Evig had been selling its products in Nevada for

8  closer to twenty years.[15]  I rejected that unsupported statement because Nevada's dilution statute

9  is concerned with the fame of the at-issue trade dress, not just the fame of the company that

10 created it.[16]

11 **C.    Mister Brightside now moves for attorneys' fees it incurred to defend itself.**

12        Mister Brightside believes that it is entitled to attorneys' fees it incurred to defend itself

13 against Evig's claims.  It offers two statutory hooks for those fees: (1) NRS 600.430, a civil-

14 remedies provision nestled into Nevada's statutory scheme governing trademark-infringement

15 suits, and (2) NRS 18.010(2)(b), which permits fees to the prevailing party if the opposing

16 party's case was brought or maintained without reasonable ground.[17]  Evig contends that NRS

17 600.430 applies only to suits relating to a registered trademark and thus does not permit an award

18

19

20

---

21  [13] *Id.* at 16–19.

    [14] Nev. Rev. Stat. § 600.435.

22  [15] ECF No. 38 at 17–18.

23  [16] *Id.*

    [17] ECF No. 40.

of fees in this unregistered trade-dress case.[18]  It also argues that its claims were based on

credible evidence, so fees under NRS 18.010(2)(b) are not warranted.[19]

## Discussion

**A.    Mister Brightside is not entitled to attorneys' fees under Nevada's civil-remedies statute governing trademark-infringement suits.**

Mister Brightside first relies on NRS 600.430 to contend that it is statutorily entitled to

attorneys' fees in this action.  That provision, entitled "Civil remedies," states that "[a]ny owner

of a mark registered in this State may proceed by suit to enjoin the manufacture, use, display[,]

or sale of counterfeits or imitations of it."[20]  In addition to spelling out the injunctive and

monetary relief that may be available to the owner of a registered trademark who prevails on an

infringement claim, it also allows courts to "award costs and reasonable attorney's fees to the

prevailing party" in "an action brought pursuant to this section."[21]  Mister Brightside contends

that NRS 600.430's attorneys' fees provision applies to claims brought under NRS 600.420 and

600.435, so they apply here.[22]

NRS 600.420 provides statutory liability for infringement upon a registered trademark.[23]

Evig initially brought such a claim but admitted at the motion-to-dismiss stage that its trademark

was not registered, so that claim was dismissed.[24]  The case proceeded instead with a common-

---

[18] ECF No. 43.

[19] *Id.*

[20] Nev. Rev. Stat. § 600.430(1).

[21] Nev. Rev. Stat. § 600.430(3).

[22] ECF No. 40 at 2, 10.

[23] Nev. Rev. Stat. § 600.420.

[24] ECF No. 31 at 21:12–17, 30:9–12.

1   law trademark-infringement claim, which does not require that the plaintiff own a registered

2   trademark.  Assuming for the sake of argument that NRS 600.430 does provide for attorneys'

3   fees awards for violations of NRS 600.420, Mister Brightside does not adequately show that

4   those remedies can also be awarded for a common-law claim.  Indeed, NRS 600.440 explains

5   that "[t]he rights and remedies enumerated in NRS 600.240 to 600.450 . . . are in addition to

6   those to which an owner of a mark is entitled under the common law," which implies that those

7   remedies were not meant to supplant those available under the common law.  Here, the bulk of

8   the litigation over Evig's trade-dress allegations concerned its common-law claim, not its

9   statutory claim.  So I decline to apply NRS 600.430(3) to the fees incurred defending against

10  Evig's common-law trade-dress claim.

11          Mister Brightside's argument that Evig's dilution claim under NRS 600.435 is subject to

12  the attorneys' fees provision in NRS 600.430 is also unpersuasive.  It contends that that the

13  dilution statute contemplates the application of NRS 600.430's attorneys' fees provision because

14  it folds NRS 600.430 into its remedies subsection.  NRS 600.435(3) states in relevant part that

15  "the owner of a mark that is famous may obtain only injunctive relief in an action brought

16  pursuant to this section."  But it also acknowledges that "[t]he owner of a mark that is famous is

17  entitled to the remedies provided in NRS 600.430 if the person using the mark willfully intended

18  to cause dilution of the mark or willfully intended to trade on the reputation of the owner of the

19  mark."[25]

20          It's clear from the way NRS 600.435(3) is structured that the statute was not intended to

21  import the entirety of NRS 600.430 into its remedies scheme.  NRS 600.430(2) includes a list of

22  injunctive and monetary relief that a court can impose if the owner of a registered mark prevails.

23

---

[25] Nev. Rev. Stat. § 600.435(3).

1    NRS 600.435 only references the remedies available to a prevailing owner of a famous mark and

2    limits the application of NRS 600.430 to instances in which the dilution of the mark was willful.

3    That structure unambiguously imports only the available remedies in NRS 600.430(2)—not the

4    attorneys' fees provision for prevailing parties in NRS 600.430(3).  Mister Brightside has not

5    presented any authority suggesting otherwise.  So I cannot conclude that Mister Brightside's

6    success in defending against Evig's NRS 600.435 claim entitles it to fees either.

7    **B.    Mister Brightside is entitled to reduced fees under NRS 18.010(2).**

8         Mister Brightside alternatively seeks an attorneys' fees award under NRS 18.010(2)(b),

9    which permits the recovery of attorneys' fees if the court concludes that a claim "was brought or

10   maintained without reasonable ground or to harass the prevailing party."[26]  The statute instructs

11   courts to "liberally construe" it "in favor of awarding attorney's fees in all appropriate situations"

12   and stresses that it "is the intent of the [Nevada] Legislature that the court" award these fees "to

13   punish for and deter frivolous or vexatious claims and defenses because such claims and

14   defenses overburden limited judicial resources, hinder the timely resolution of meritorious

15   claims[,] and increase the cost of engaging in business and providing professional services to the

16   public."[27]  The Nevada Supreme Court has elaborated that "a claim is frivolous or groundless"

17   under  NRS 18.010(2)(b) "if there is no credible evidence to support it."[28]  Nevada's High Court

18   also counsels courts to "inquire into the actual circumstances of this case, rather than a

19   hypothetical set of facts favoring plaintiff's averments."[29]

20

---

21   [26] Nev. Rev. Stat. 18.010(2)(b).

     [27] *Id.*

22   [28] *Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 800 (Nev. 2009) (citations omitted).

23   [29] *Baldonado v. Wynn Las Vegas, LLC*, 194 P.3d 96, 106–107 (Nev. 2008) (cleaned up).  Some
     judges in this district have held that NRS 18.010(2)(b) doesn't apply to federal actions, finding
     that it concerns the procedural conduct of the parties, not substantive state-law issues.  *Compare,*

Evig's actions before this dispute made its way to this court suggest that it didn't bring this lawsuit with reasonable grounds. It first sent a demand letter to Mister Brightside claiming that the trade dress on its fruit and veggie supplements infringed on Evig's trade dress. Mister Brightside disagreed but offered to change its labeling to further distinguish it from Evig's products.[30] Evig never responded.[31] It then filed a lawsuit alleging federal trademark infringement against Mister Brightside, but that trade-dress claim was dismissed by U.S. District Judge James C. Mahan because the complaint's trade-dress definition was impermissibly open-ended and it relied primarily on the legally invalid argument that a court could conclude that infringement occurred just by looking at the two products side-by-side.[32] Judge Mahan also pointed out that he was "skeptical that certain elements" in the defined trade dress "are nonfunctional and thus protectable," pointing specifically to the supplemental-facts label that Evig "claims is protected" but "seems to be a functional description of the ingredients."[33] And

_e.g., Heyman v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ._, 2020 WL 428013, at *4–5 (D. Nev. Jan. 27, 2020) (finding that NRS 18.010(2)(b) doesn't apply to procedural argument that the plaintiff "knew he had no claims against" the defendant but brought them anyway), _Taylor v. Beckett_, 2017 WL 3367091, at *3 (D. Nev. Aug. 4, 2017) (declining to apply NRS 18.010 when party seeking fees argued that its opponent frivolously brought and maintained the lawsuit), _In re Andrade-Garcia_, 635 B.R. 509, 515 (B.A.P. 9th Cir. 2022) (rejecting argument that NRS 18.010(2)(b) "was implicated at the time the claims were filed" and thus should be treated as substantive law, explaining that "filing a proof of claim is 'conduct' in the bankruptcy court" and thus governed by federal law), _and Oliva v. Nat'l City Mortg. Co._, 490 F. App'x 904, 906 (9th Cir. 2012) (unpublished), _with, e.g., Equals Int'l, LTD. v. Scenic Airlines_, 35 F. App'x 532, 534–35 (9th Cir. 2002) (unpublished) (holding that NRS 18.010(2)(b), not federal law, "properly applies" to a diversity action brought in federal court) _and Topolewski Am., Inc. v. Cal. Employment Development Dep't_, 2023 WL 2756528, at *6 (D. Nev. Mar. 31, 2023) (applying NRS 18.010(2)(b) to analyze argument that state-law claim was frivolously brought). Evig does not dispute that NRS 18.010(2)(b) applies here, so I assume, without deciding, that it does.

[30] ECF No. 34 at 5; ECF No. 34-14.

[31] ECF Nos. 34-15, 34-16.

[32] ECF No. 26 at 8 in _Evig, LLC v. Mister Brightside, LLC_, Case No. 2:23-cv-00186-JCM-BNW.

[33] _Id._ at 8 n.4.

8

he dismissed Evig's state-law dilution claim because Evig failed to establish "*when* its trade

dress allegedly became famous."[34]  Despite this dismissal pointing to clear legal issues with

Evig's claims, Evig filed a new lawsuit, this time alleging only state-law claims that largely

mirrored the alleged facts found insufficient in the federal court.[35]

Some of Evig's claims were plainly invalid from the start.  Evig initially brought a claim

under NRS 600.420—the statute protecting registered trademarks—despite conceding at the

motion-to-dismiss stage that its trade dress was not registered.[36]  It also brought a claim for

violations of NRS 598.0915, Nevada's Deceptive Trade Practices Act, but couldn't articulate any

basis for that claim in response to Mister Brightside's motion to dismiss it.[37]  Evig's intentional-

interference-with-prospective-economic-advantage claim similarly failed because the facts didn't

establish the elements of such a claim.[38]  So even at the motion-to-dismiss stage, it was clear that

three of Evig's claims were brought without reasonable grounds.

The evidence presented on summary judgment also suggests that Evig maintained its

dilution claim in bad faith.  Evig failed to provide evidence to support almost any factors that

make up the well-established, multi-factor tests that courts consider in trade-dress infringement

and dilution cases.  Instead, as discussed in my summary-judgment order, Evig fabricated

admissions by Mister Brightside to support arguments,[39] cited to exhibits that didn't establish the

---

[34] *Id.* at 9.

[35] *Compare* ECF No. 1-1 at 8–39 *with* ECF No. 1-1 in 2:23-cv-00186-JCM-BNW.

[36] *See* ECF No. 1-1 at 26–27; ECF No. 31 at 21:12–17.

[37] ECF No. 31 at 30:22–31:3.

[38] *Id.* at 30:13–21.

[39] *See* ECF No. 38 at 13 n.54.

facts that Evig presented them for,[40] and submitted harassing and irrelevant information about unserved defendants and Mister Brightside's other products that had nothing to do with the resolution of its claims.[41]  Indeed, its own documents negated some of its most important factual allegations.  For example, to prove state-law dilution, the plaintiff must show that its trade dress is famous in Nevada.  To "prove" this element, Evig claimed that it had done business in Nevada for 20 years, but one of its own exhibits clearly showed that the trade dress at issue had only been in use since April 2021.[42]  Evig presented no other evidence to support its dilution claim.[43]  So the record supports the conclusion that Evig maintained its dilution claim despite having no credible evidence to support it.

I cannot conclude, however, that Evig's common-law trade-dress infringement claim was similarly deficient.  Although Evig did not present evidence to support most of the factors that courts consider when analyzing trademark disputes, it did supply evidence—in the form of Amazon reviews from Mister Brightside customers—that consumers may have believed that Mister Brightside's products were actually Evig's.  "[T]he *sine qua non* of trademark infringement is consumer confusion,"[44] and evidence of actual consumer confusion "is persuasive proof that future confusion is likely."[45]  And although this court did not analyze Evig's actual-confusion evidence because its claim failed other elements of the infringement test,

---

[40] *Id.*

[41] *Id.* at 12 n.49.

[42] *Id.* at 18.

[43] *See id.* at 17–18 (noting that Evig "all but concedes that it has no evidence to support most of Nevada's statutory factors to assess a trade dress's degree of fame").

[44] *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1142 (9th Cir. 2011).

[45] *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 352 (9th Cir. 1979) (citations omitted).

this did constitute evidence of consumer confusion.  So though I find that Evig had no grounds to bring or maintain its statutory trademark-infringement, deceptive-trade-practices, interference-with-prospective-business-advantage, or dilution claims, it did have evidence to support its common-law trade-dress claim.

Of course, "[t]he prosecution of one colorable claim does not excuse the prosecution of [other] groundless claims."[46]  So if the court concludes that some claims are groundless "it should allocate [the prevailing party's] attorney[s'] fees between the grounded and groundless claims."[47]  Mister Brightside asks the court to avoid allocation in this case because all of Evig's claims are "inextricably intertwined" and required largely the same discovery efforts and motion practice.[48]  While that's true, it would seem a misuse of NRS 18.010(2)(b) to permit fees incurred to litigate an entire case when at least one of the defeated party's claims had credible evidence to support it and thus was not brought or maintained without reasonable grounds.  So I find it reasonable to allocate fees in an amount that fairly can be attributed to work spent on the other four claims (i.e., Evig's prospective-business-advantage, registered-trademark, deceptive-trade-practices, and dilution).  I thus award 4/5 of the fees associated with this case up to and including the motion to dismiss to account for the time spent defending Evig's four meritless

---

[46] *Bergmann v. Boyce*, 856 P.2d 560, 563 (Nev. 1993), *superseded by statute on other grounds as recognized in In re DISH Network Derivative Litig.*, 401 P.3d 1081, 1093 n.6 (Nev. 2017).

[47] *Id*.

[48] ECF No. 40 at 14.

1 claims[49] and split the rest in half to account for time spent defending against the groundless

2 dilution claim throughout discovery and summary judgment.[50]

3

4 **C.  The fees charged for the allocated work, with one exception, were reasonable under**
**_Brunzell_.**

5          Federal courts sitting in diversity determine the reasonableness of attorneys' fees

6 awarded under state law when those fees are connected to the substance of the case.[51]  Under

7 Nevada law, "the method upon which a reasonable fee is determined is subject to the discretion

8 of the court, which is tempered only by reason and fairness."[52]  One permissible calculation

9 method is the lodestar approach, which involves "multiplying the number of hours reasonably

10 spent on the case by a reasonable hourly rate."[53]

11          Nevada courts must also review the requested amount "in light of the factors set forth in"

12 the Supreme Court of Nevada's decision in _Brunzell_.[54]  They include:

13                  (1) the qualities of the advocate: his ability, his training, education,
                 experience, professional standing, and skill;
14

15                  (2) the character of the work to be done: its difficulty, its intricacy,
                 its importance, time, and skill required, the responsibility imposed
16                 and the prominence and character of the parties where they affect
                 the importance of the litigation;

17
_____

18 [49] Mister Brightside's attorneys worked 146.6 hours and billed $77,392.00 between November
2023, when this case was initiated, and March 5, 2024, the date of the court's hearing on Mister
19 Brightside's motion to dismiss.  80% of this amount is $61,913.60.

[50] Mister Brightside's attorneys worked 338.2 hours from March 6, 2024, to January 31, 2025,
20 the date this case was terminated.

21 [51] _In re Larry's Apartment_, 249 F.3d 832, 838 (9th Cir. 2001).

[52] _Shuette v. Beazer Homes Holdings Corp._, 124 P.3d 530, 548–49 (Nev. 2005) (en banc)
22 (internal quotation marks omitted).

23 [53] _Id._ at 549 & n.98 (internal quotation marks omitted).

[54] _Haley v. Dist. Ct._, 273 P.3d 855, 860 (Nev. 2012) (citing _Brunzell v. Golden Gate Nat'l Bank_,
455 P.2d 31, 33 (1969)).

(3) the work actually performed by the lawyer: the skill, time and attention given to the work;

(4) the result: whether the attorney was successful and what benefits were derived.[55]

Finally, Local Rule 54-14 requires any application for attorneys' fees to include, as relevant here, an attorney affidavit, "[a] reasonable itemization and description of the work performed[,]" and "[a] brief summary" of 13 categories of information designed to elicit more information about the case and the work that the attorneys performed.[56]

I have carefully reviewed Mister Brightside's motion and its attorneys' sworn declarations, billing records, and hourly rates. I find that the rates charged and the amount of work performed, compared to the legal market in Las Vegas and the circumstances of this case, are reasonable. Mister Brightside's lawyers are seasoned professionals who devoted significant attention and skill to this case and represented their clients successfully.

I have also considered Evig's objections to the number of hours that Mister Brightside's attorneys worked on specific motions and find them unpersuasive. Evig merely states that the 484.8 hours Mister Brightside's lawyers billed "cannot be justified" because "there [were] approximately five motions and one hearing" in this case. But Evig fails to account for the discovery period and the complexity of the work—trademark-infringement cases are often fact-intensive and require development of a robust evidentiary record. I do not find that the hours worked on this case are unreasonable merely because the parties didn't engage in an abundance of motion practice.

---

[55] *Brunzell*, 455 P.2d at 34.

[56] L.R. 54-14 (a)–(b).

Evig also lists the amount of time that Mister Brightside's attorneys took to draft several motions in this case, but it fails to explain why any of those expenditures are unreasonable, so I overrule those objections.[57]  Evig specifically argues that the two hours Mister Brightside spent researching records from the United States Patent and Trademark Office related to Evig's trademark applications were "unnecessary."[58]  Evig again fails to explain why research into trademark applications that involved, or may have involved, some of the design elements that Evig included in its defined trade dress was irrelevant.[59]  Evig also contends that the approximately 55.2 hours spent drafting Mister Brightside's summary-judgment motion and preparing exhibits in support of the motion, as well as the 30.4 hours spent on Mister Brightside's reply, were "excessive."[60]  I find that, given the factually extensive record and complexity of the trade-dress and dilution matters in this case, those hours are reasonable.

But I do credit Evig's argument that it isn't reasonable to award Mister Brightside fees for the 33 hours spent discussing and drafting a motion to strike Evig's expert because that motion was never filed.[61]  "[A]n attorney might reasonably prepare a motion only to decide, upon further reflection, that the motion is not worth filing."[62]  But, if the moving party fails to explain "why preparing this particular unfiled motion was reasonable," it is within the court's

---

[57] *See* ECF No. 43 at 14 (noting that "10.9 hours were charged for the motion to dismiss, . . . 17.8 hours [were] billed for an opposition to a motion to remand, . . . 26.3 hours were expended in an around drafting an opposition to a motion for a preliminary injunction," etc., without explaining why Evig believes those hourly expenditures were unreasonable).

[58] *Id.*

[59] *Id.*  For example, Evig notes that one of those hours was spent pulling records related to Evig's trademark application for its leaf logo.

[60] *Id.*

[61] *Id.*

[62] *Vargas v. Howell*, 949 F.3d 1188, 1198 (9th Cir. 2020).

discretion to disallow fees for it.[63]  Mister Brightside fails to provide any explanation for its

unfiled motion to strike, so I exercise my discretion to strike those hours from the final award.[64]

So I reduce the award by 33 hours, charged at $14,808.50, before allocating hours as discussed in

my NRS 18.010(2)(b) analysis.  These calculations result in an $155,465.75 attorneys' fees

award in Mister Brightside's favor.  I also conclude that Mister Brightside is entitled to

reasonable fees incurred to file the instant motion.  Mister Brightside must file a short

supplemental motion with documentation supporting "fees-on-fees" award within 10 days of this

order.

### Conclusion

IT IS THEREFORE ORDERED that defendant Mister Brightside, LLC's motion for

attorneys' fees **[ECF No. 40] is GRANTED in part: Mister Brightside is entitled to fees of**

**$155,465.75 under NRS 18.010(2)(b).**  Mister Brightside must file a short supplemental motion

seeking reasonable fees incurred to file its motion for attorneys' fees **within 10 days of entry of**

**this order.**  The briefing schedule in L.R. 7-3 will then apply.  The court will reserve entry of an

amended judgment until after that supplemental motion is decided.

---

[63] *Id.*  It does not appear that the Nevada Supreme Court has addressed when attorneys' fees for hours spent drafting unfiled motions are reasonable, but I conclude that it would analyze the situation similarly to the Ninth Circuit.

[64] Presumably the motion wasn't filed because Mister Brightside prevailed on summary judgment.  But motions to strike are often filed concurrently with summary-judgment motions, and Mister Brightside fails to explain why it didn't take that step here, particularly because it could have surmised from Evig's preliminary-injunction briefing that Evig would rely on that expert in response to its summary-judgment motion.  *See* ECF No. 16 at 3–4.

IT IS FURTHER ORDERED that the claims against Charles Brewer, Ryan O'Shaughnessy, Newport Beauty and Wellness, LLC, and Bayview Marketing, LLC **are DISMISSED without prejudice under Federal Rule of Civil Procedure 4(m)**.

_____
U.S. District Judge Jennifer A. Dorsey
August 27, 2025